# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY AND EMPLOYERS INSURANCE OF WAUSAU, A Mutual Company | PLAINTIFFS |
| V. | CIVIL ACTION NO. 3:01-CV-935WS |
| JERROLL LAVON "J.L." HOLLOWAY | DEFENDANT |

## MEMORANDUM OPINION AND ORDER

Before this court is the motion of defendant Jerroll Lavon "J.L." Holloway for summary judgment [**Docket No. 26-1**]. This motion is predicated upon the authority of Rules 56(b) and (c).[1] Plaintiffs here are Liberty Mutual Insurance Company ("Liberty Mutual") and Employers Insurance of Wausau ("Employers Insurance"). The defendant is Jerroll Lavon "J.L." Holloway (hereinafter "Holloway"). This lawsuit focuses upon a settlement agreement between these parties and others, negotiated after Friede Goldman International, Inc., ("Friede Goldman") and Ham Marine, Inc., ("Ham Marine") were accused of fraud relative to Workers Compensation premiums. Friede Goldman and Ham Marine thereafter settled with Liberty Mutual and Employers Insurance after Liberty

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Mutual had filed a lawsuit against Friede Goldman and Ham Marine. One of the defendants in that action was Holloway who guaranteed a portion of the settlement amount if Friede Goldman failed to submit the entire settlement amount to Liberty Mutual. The parties to the instant litigation now quarrel over the extent of Holloway's obligation relative to events which transpired after the execution of the settlement agreement.

This court has subject matter jurisdiction over this lawsuit by way of diversity of citizenship, Title 28 U.S.C. § 1332.[2] Diversity jurisdiction lies where the parties are diverse in citizenship and where the matter in controversy exceeds the sum of $75,000.00, exclusive of costs and interest. No party disputes that this court has subject matter jurisdiction pursuant to the authority of § 1332. Where this court's jurisdictional predicate is diversity of citizenship pursuant to Title 28 U.S.C. § 1332, this court will apply the substantive law of the state where it sits, the law of the State of Mississippi. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Therefore the substantive law of Mississippi controls the merits of the parties' claims in the instant case. *Erie Railroad Company v. Thompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

Previously, this court heard the motion of Liberty Mutual and Employers Insurance for summary judgment against defendant Holloway [**Docket No. 16-1**]. The plaintiffs contended in said motion that Holloway had breached the terms of a settlement agreement. This court denied that motion, finding that the settlement agreement issue at that time was not ripe for decision due to matters pending in the United States Bankruptcy

---

[2]Title 28 U.S.C. § 1332 titled "Diversity of citizenship, etc.," subsection (a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; ... ."

2

Court. Nevertheless, this court directed Liberty Mutual and Employers Insurance to re-urge their motion, if convinced of its application, once the bankruptcy matter was resolved.

The other summary judgment motion [**Docket No. 26-1**] was filed by the defendant Holloway on September 7, 2005, after the bankruptcy matter had been concluded. Holloway's motion seeks a grant of offset and/or credit against the sum of his original guaranty relating to the settlement agreement. In addition, there is also the motion of Liberty Mutual to alter the judgment or amend the judgment entered in this court's minute entry of November 5, 2007 [**Docket No. 39-1**]. This motion is deemed moot given the court's resolution of all the dispositive issues below.

Also before the court is the motion for enforcement of the same settlement agreement filed by Holloway in the related case of *Liberty Mutual Insurance v. Ham Marine, et al.*, 3:98-cv-611WS [**Docket No. 151-1**].[3] This motion was filed to enforce the aforementioned settlement agreement after the bankruptcy matter had been resolved. This court declared this motion in Civil Action No. 3:98-cv-611WS to be moot since the same issues are resolved in the instant case.

---

[3]Civil Action 3:98-cv-611WS was a civil action for fraud brought by Liberty Mutual and Employers of Wausau against Friede Goldman International, Inc., Ham Marine, Inc., Petra Contractors, Inc., KT Contractors, Inc., J.L. Holloway, Ron Schnoor, Carl Crawford, Robert C. Andrews, Jr., W. Edward Trehern, Kim Adkins, Bancorpsouth Bank (as successor by merger to "Stewart Sneed Hewes, Inc."), Stewart Sneed Hewes of Jackson County, Carol Gilbert and J. Nichols Myers. The settlement agreement in question in the instant case pertains to Civil Action 3:98-cv-611WS and applies to the two plaintiffs and the fourteen defendants involved in that litigation with one exception which is discussed below.

**PERTINENT FACTS**

The factual background for this dispute is as follows. Friede Goldman experienced a heavy financial burden caused in part by high loss *experience rates*[4] relating to Workers Compensation premiums. Seeking to reduce the costs of obtaining Workers Compensation insurance and reinsurance, Friede Goldman established several new companies through which it purchased Workers Compensation insurance and reinsurance at premium prices based on the experience rates that new employers with little or no loss experience would enjoy, rather than at the very high loss experience rates which Friede Goldman had established over its many years of operation. These new companies were actually subsidiaries wholly owned and operated by Friede Goldman and/or Ham Marine and others. The true relationship of the old company and the new companies was not made known to insurers and reinsurers such as Liberty Mutual and Employers Insurance.

As one might expect, the true relationship between Friede Goldman and the new companies was eventually discovered and Liberty Mutual and Employers Insurance sued for fraud. *See Liberty Mutual et al. v. Friede Goldman International,* Civil Action No. 3:98-cv-611WS.[5] This lawsuit was settled on December 5, 2000. Friede Goldman entered

---

[4]Experience rating is a mandatory process that modifies the published rates for rating classifications by taking into account the actual reported losses and payrolls of an individual business. It is a financial incentive to employers to minimize the financial cost of workplace injuries. *See* www.keyrisk.com/pdfs/WorkersCompensationRating.

[5]The settlement agreement specifically provides for one exception, those claims Bancorpsouth Bank, Steward Sneed Hewes of Jackson County, Carol Gilbert and J. Nichols Myers (the "SSH defendants") might have against any of the other defendants, or claims any of the other defendants might have against the SSH defendants.

into a settlement agreement wherein it agreed to pay Liberty Mutual and Employers Insurance $4.5 million dollars as follows:

- $2 million on January 2, 2001;
- $1.25 million on April 2, 2001; and
- $1.25 million on July 2, 2001

Once the $4.5 million dollars was paid, Liberty Mutual and Employers Insurance agreed to provide mutual releases to all defendants in Civil Action No. 3:98-cv-611WS. Only the defendant Friede Goldman was obligated by the settlement agreement to make these payments. The defendant Holloway, however, agreed to guarantee personally the third payment of $1.25 million dollars due on July 2, 2001, in the event Friede Goldman was unable to do so.

Friede Goldman paid the first two installments as set forth above, the second $1.25 million installment being paid in April of 2001. Shortly after payment of the second installment, Friede Goldman filed a Chapter 11[6] bankruptcy petition in mid-April of 2001, and sought permission from the Bankruptcy Court to make the third and final payment to Liberty Mutual and Employees Insurance. A few months later the Bankruptcy Court denied Friede Goldman's request and directed the Trustee to file a lawsuit against Liberty Mutual and Employers Insurance.

The theory underlying the Trustee's lawsuit was that of preference. The Trustee contended that Liberty Mutual and Employers Insurance had received the first two

---

[6]Title 11 U.S.C. § 1101 et seq. Chapter 11 bankruptcy proceedings ordinarily are brought by a debtor in possession and culminate in the confirmation of a plan of debt reorganization rather than liquidation. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008).

payments totaling $3.25 million dollars as a preference. A "preference" is a transfer of a debtor's assets, during a specified pre-bankruptcy period, that unjustifiably favors the transferee over other creditors. *See* 4 Collier on Bankruptcy §547.01 at 547-14 (15th ed. 1996); *Weaver v. Aquila Energy Marketing Corporation,* 196 B.R. 945, 950-51 (S.D. Tex. 1996). Title 11 U.S.C. § 547(b) permits a bankruptcy trustee to "avoid any transfer of property" made (1) to a creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) 90 days before the bankruptcy filing, and (5) that enables the creditor to receive a larger share of the estate than if the transfer had not been made. *Id.*

Meanwhile, as the matter in bankruptcy was pending, Liberty Mutual and Employers Insurance turned to Holloway for the remaining $1.25 million due on July 2, 2001. Holloway at first refused to pay and the instant lawsuit was filed against him to enforce the aforesaid guaranty in Civil Action No. 3:98-cv-611WS. Ultimately, Holloway agreed to pay the $1.25 million dollars plus interest in exchange for the full and final release of all defendants in Civil Action No. 3:98-cv-611WS. Liberty Mutual and Employers Insurance, by now fully engaged in Friede Goldman's bankruptcy proceedings and facing preference litigation with the Trustee which could result in the Bankruptcy Court taking away the $3.25 million already paid to them, refused to provide the releases sought by Holloway until the preference litigation was resolved. When Holloway refused to make the last payment without the aforesaid releases, Liberty Mutual and Employers Insurance filed the instant lawsuit, Civil Action No. 3:01-cv-935WS, claiming that Holloway had breached the settlement agreement in Civil Action No. 3:98-cv-611WS by insisting on being provided the releases immediately. Thereafter, Liberty Mutual and Employers

6

Insurance submitted their motion for partial summary judgment against Holloway for the $1.25 million owed [**Docket No. 16-1**].

Holloway contends that he has not breached any agreement by simply requiring the releases already provided for in the settlement agreement, and that Liberty Mutual and Employers Insurance have breached the agreement by failing to provide the release of all the defendants as agreed. Holloway says that this constitutes a failure of consideration. Liberty Mutual and Employers Insurance responded that Holloway would get his releases when there was a favorable conclusion to the preference litigation in Bankruptcy Court. Holloway, however, remained intransigent, offering the $1.25 million only upon receipt of the releases promised in the settlement agreement which did not contemplate Friede Goldman's Chapter 11 bankruptcy petition. Liberty Mutual and Employers Insurance did not want to deliver the releases while under the threat of losing the $3.5 million dollars they already had received, so, they came to this court for a resolution of the matter.

This court, considering the arguments of the parties on summary judgment, was persuaded that the factual circumstances offered no ripe issue for the court to rule on since, at that time, the Bankruptcy Court had not ruled yet on the question whether the first two payments by Friede Goldman of $3.25 million constituted a preference. This court chose to await the Bankruptcy Court's decision and denied plaintiffs' motion for summary judgment [**Docket No. 16-1**]. This court also informed the parties that, once the Bankruptcy Court ruled on the preference issue, the plaintiffs were welcome to re-urge their motion for summary judgment in this court.

7

The bankruptcy litigation eventually settled with no determination of the preference issue. The parties then returned to this court, Liberty Mutual and Employers Insurance re-urging their previous motion for summary judgment, and Holloway filing his own motion for summary judgment.

The parties report that on April 6 and 7, 2005, the Bankruptcy Court permitted the parties in the adverse proceeding pertaining to Civil Action No 3:98-cv-611WS to participate in mediation of all adverse claims, including the preference issue. The parties emerged from the mediation to announce that the preference claims had been settled. Liberty Mutual and Employers Insurance agreed to make a voluntary payment to the Trustee of $1.9 million dollars in order to resolve the preference issue. Inasmuch as this matter was settled, the Bankruptcy Court never entered a ruling on the preference issue.

After settling with the Trustee, Liberty Mutual and Employers Insurance approached the other defendants seeking their contribution(s) to a final settlement of Civil Action No. 3:98-cv-611WS. In order to buy peace, defendant Bancorpsouth Bank, as successor by merger to Stewart Sneed Hewes, Inc., paid Liberty Mutual and Employers Insurance $500,000.00. Liberty Mutual and Employers Insurance then offered J.L. Holloway a full release in exchange for the third $1.25 million payment Holloway previously had agreed to pay on behalf of Friede Goldman. Holloway refused, asserting that in light of the $500,000.00 payment to Liberty Mutual and Employers Insurance from Bancorpsouth Bank, purportedly in exchange for a release from any further liability to either Liberty Mutual or Employers Insurance in Civil Action No. 3:98-cv-611WS, Holloway's obligation now was reduced to $750,000.00.

Liberty Mutual and Employers Insurance disagreed, noting that their settlement with Bancorpsouth Bank specifically provides that the $500,000.00 payment was not part of the $1.25 million dollar payment which Holloway had guaranteed. Holloway responds that while the $500,000.00 payment is not necessarily a part of the $1.25 million dollar third payment, it is part of the overall $4.5 million dollar settlement. Holloway argues that Liberty Mutual and Employers Insurance were paid $3.25 million dollars prior to Friede Goldman's bankruptcy. Thus, says Holloway, if he is required to pay the entire $1.25 million dollar third payment in addition to the $500,000.00 paid by Bancorpsouth Bank, Liberty Mutual and Employers Insurance will have received $5,000,000.00, or $500,000.00 more than the settlement agreement requires. If, on the other hand, Holloway is required to pay only $750,000.00, he contends that the settlement agreement will be fully satisfied. Holloway now has filed his own motion for summary judgment[7] in the instant case, seeking to enforce the original settlement agreement in Civil Action No. 3:98-cv-611WS, subject to the $500,000.00 provided by the payment from Bancorpsouth Bank [**Docket No. 26-1**].

Liberty Mutual and Employers Insurance respond that Holloway is not entitled to an offset of the $500,000.00 because they will never actually receive the full amount required by the settlement agreement. They argue that the settlement agreement entitled Liberty Mutual and Employers Insurance to payment of $4.5 million dollars, $3.25 million of which

---

[7]The defendant Holloway's motions for summary judgment and to enforce settlement are based on the same premises, that the settlement in Bankruptcy Court enured to his benefit in the amount of $500,000.00 and that he now owes only $750,000.00 plus interest on his original guarantee of $1.25 million.

they had received in two separate payments when Friede Goldman filed for bankruptcy. Almost immediately after the second installment payment was made, say Liberty Mutual and Employers Insurance, Friede Goldman petitioned for Chapter 11 bankruptcy relief, a move which placed the $3.25 million dollars they had received in jeopardy, particularly after the Bankruptcy Court directed the Trustee to pursue a preference action to recover some or all of the amount for the benefit of other creditors. In April of 2005, Liberty Mutual and Employers Insurance voluntarily paid $1.9 million dollars to the Trustee in bankruptcy after mediating the preference issue. Thus, they argue that they have received only $1.85 million dollars ($1.35 million + $.5 million) of the $4.5 million they were entitled to receive pursuant to the settlement agreement, and, that even if Holloway honors his original guaranty in full, they will receive a total of only $3.1 million of the $4.5 million dollar amount set forth in the settlement agreement.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). This burden does not require that the moving party "support the motion with materials that

negate the opponent's claim. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim." *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 547-48 (S.D. Miss 2005) (internal citations to *Celotex*, 477 U.S. at 323-24, omitted).

In opposing a Motion for Summary Judgment, the responding party may not rely on mere conclusory allegations; instead, through affidavits or other competent evidence, the responding party must set forth specific facts showing that there is a genuine issue of *material* fact, the resolution of which requires a trial. *See Celotex*, 477 U.S. at 324. A material fact is one the resolution of which will affect the outcome of the case. *GeoSouthern Energy Corp. v. Chesapeake Operating, Inc.,* 274 F.3d 1017, 1020 (5th Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Douglass v. United Services Automobile Assn*, 65 F.3d 452, 458 (5th Cir. 1995). Unsupported statements or conclusions of law are insufficient to create a genuine factual dispute. *Id.* at 459.

## **ANALYSIS**

### **A. A Settlement Agreement Will Be Enforced**

A settlement agreement is a contract and is judged by principles of contract law. *Parmley v. 84 Lumber Company*, 911 So.2d 569, 573 (Miss. Ct. App. 2005); *In re Estate of Davis*, 832 So.2d 534 (Miss. Ct. App. 2001). Under Mississippi law a compromise reached by way of mediation or otherwise is favored, and settlement of disputes by agreement of the parties will be enforced, absent any fraud, mistake, or overreaching.

*Hastings v. Guillot*, 825 So.2d 20, 24 (Miss. 2002). Settlement agreements are contracts made by the parties, upon consideration acceptable to each of them, and the law will enforce them. *East v. East*, 493 So.2d 927, 932-33 (Miss. 1986). Courts will not rewrite settlement agreements in order to satisfy the desires of either party. *Travelers Indemnity Company v. Chappell*, 246 So.2d 498, 510 (Miss. 1971); instead, "[c]ourts should, so far as they can do so legally and properly, support agreements which have for their object the amicable settlement of doubtful rights by parties ... ." *Chantey Music Publishing, Inc. v. Malaco, Inc.*, 915 So.2d 1052, 1056 (Miss. 2005).

### B. The Settlement Agreement and Holloway's Guaranty

The settlement agreement in dispute is comprised of two parts, the SETTLEMENT AGREEMENT WITH MUTUAL RELEASES, and the attachment referred to as "Exhibit A" which sets forth the payments Friede Goldman is to make and contains Holloway's guaranty. The settlement agreement states that Liberty Mutual and Employers Insurance "covenant that they shall not, in any manner whatsoever, commence, institute, prosecute, or in any way cause to be instituted any suit, claim, action or proceeding, of any kind and nature whatsoever, whether or not now existing or known, arising out of, related to, or concerning, any alleged loss, damage, cost or expense allegedly caused, occasioned by, or resulting from the actions asserted by, or that could have been asserted by the plaintiffs ... in the civil action described above, except in the failure, delay or event of a default by the defendants in paying the cash considerations required by the terms of Exhibit 'A'."

Exhibit "A," paragraph C, provides for the obligations of Holloway's guaranty as follows:

> C. As respects the third (last) set of installment payments,[8] those due to plaintiffs not later than noon, July 2, 2001, the individual defendant Jerroll Lavon "J.L." Holloway hereby guarantees personally and to the full extent thereof and unconditionally the full and timely payment thereof. Moreover, it shall be the affirmative duty of guarantor defendant Holloway to ascertain as to the last set of payments of which he is personally guaranteeing payment as aforesaid and in sufficient time prior to July 2, 2001, that defendants third and final set of payments is going to be made exactly as and when due so that should he learn that such may not be paid by defendants as required, he shall have arranged to personally pay the third set of installment payments not later than noon on July 2, 2001, in exactly the amounts, and to the recipients designated and in the manners and as otherwise recited hereinabove. Any failure by guarantor defendant Holloway to then make such third set of payments *in lieu* of payments by Friede Goldman Halter, Inc., as and when such would have been due from defendants generally shall itself constitute a failure, delay or default in payment, likewise entitling plaintiffs to such enforcement of the Agreement and Releases and/or to have the claims set out in the Amended Complaint and Counterclaim in the civil action[9] returned to the active docket and to those other remedies set out or alluded to hereinabove and/or in the Agreement and Releases. Any monies received therefore shall be credited in the manners recited above in subparagraph B.

### **Offset and Credit**

This court also has reviewed closely paragraph C of Exhibit "A" to the settlement agreement and finds that Holloway clearly is obligated as a guarantor for the amount of the last set of payments to Liberty Mutual and Employers Insurance in the event payment from Friede Goldman is not forthcoming. Holloway does not contest the terms of Exhibit "A," but he contends that any and all payments made toward the satisfaction of the full

---

[8]The third (last) $1.25 million dollar payment is divided into two parts, a $625,000.00 payment to Liberty Mutual and a $625,000.00 payment to Employers Insurance.

[9]Civil Action No. 3:98-cv-611WS.

13

$4.5 million dollars required by the settlement agreement should be counted toward satisfaction of that amount, and that the $1.9 million dollars paid by Liberty Mutual and Employers Insurance to the Trustee in bankruptcy to settle the preference matter cannot be recovered in any part from Holloway based on his guaranty.

Liberty Mutual and Employers Insurance counter that Holloway's math should not be accepted because his calculations do not take into account the $1.9 million dollars they were required to pay to the Trustee in bankruptcy. They argue that this amount should be subtracted from the $3.25 million Liberty Mutual and Employers Insurance had received as of April 2, 2001, immediately prior to Friede Goldman's petition for Chapter 11 bankruptcy relief. Then, the $500,000.00 contributed in pursuit of settlement by Bancorpsouth Bank would not create a windfall.

Liberty Mutual and Employers Insurance also cite Miss. Code Ann. § 85-5-7 which governs allocation of damages among joint tortfeasors. They refer specifically to the statute's language in Section (1) which provides that, "[a]s used in this section, 'fault' means an act or omission of a person which is a proximate cause of injury or death to another person or persons, damages to property, tangible or intangible, or economic injury, including, but not limited to, negligence, malpractice, strict liability, absolute liability or failure to warn. 'Fault' shall not include any tort which results from an act or omission committed with a *specific wrongful intent* (emphasis added)."

Liberty Mutual and Employers Insurance argue that Holloway has no right to demand that any contribution or credit be applied to his $1.25 million dollar guaranty because Bancorpsouth Bank is not a signatory to his personal guaranty. They also

14

suggest that the phrase "specific wrongful intent" would prohibit contribution in cases where defendants acted with such intent.

Holloway responds first by citing *O'Briant v. Hull*, 208 So.2d 784 (Miss. 1968), a case which holds that the doctrine of election of remedies or judicial estoppel prohibits a plaintiff from pursuing multiple lawsuits to recover on the same claim. In *O'Briant*, the court determined that when a litigant adopts facts necessary to recover in one suit, he waives the right to assert opposite and repugnant facts necessary to maintain a second suit. Holloway's argument is that Liberty Mutual and Employers Insurance should be bound by the terms of the settlement agreement and not be permitted to seek recoveries outside the amount promised in the settlement agreement.

This court has considered the arguments and authorities of the parties on this matter. The solution lies in this court's review and application of the "Volunteer Rule."

### C. The Volunteer Doctrine Under Mississippi Law

The "volunteer doctrine," a common law construct consistently followed under Mississippi law, provides that "[a] voluntary payment cannot be recovered back, and a voluntary payment within the meaning of this rule is a payment made without compulsion, fraud, mistake of fact, or agreement to repay a demand which the payor does not owe, and which is not enforceable against him, instead of invoking the remedy or defense which the law affords against such demand." *Genesis Insurance Company v. Wausau insurance Companies*, 343 F.3d 733, 736 (5th Cir. 2003); *McDaniel Brothers Construction Company v. Burk-Hallman Company*, 253 Miss. 417, 175 So.2d 603, 605 (Miss. 1965).

In the instant case, Liberty Mutual and Employers Insurance were not compelled to pay the Trustee in bankruptcy $1.9 million dollars. They voluntarily paid this amount in order to settle the preference issue with regard to the first two sets of payments provided for in Exhibit "A" to the settlement agreement. So, in order to avoid Charybdis (a preference determination), Liberty Mutual and Employers Insurance have fallen into Scylla (a payment which made them volunteers). *See Long Term Care, Inc. v. Jesco, Inc.*, 560 So.2d 717 (Miss. 1990). In order to recover the $1.9 million dollars, Liberty Mutual and Employers Insurance would have to show that (1) they were legally liable to the Trustee in bankruptcy for that amount, (2) that they paid under compulsion, and that (3) the amount paid was reasonable. *See Certain Underwriters at Lloyd's of London v. Knostman*, 783 So.2d 694, 698 (Miss. 2001); *Keys v. Rehabilitation Centers., Inc.*, 574 So.2d 579, 584 (Miss. 1990). In this court's view, Liberty Mutual and Employers Insurance cannot establish these elements in any attempt to recover some or all of its voluntary $1.9 million dollar payment to the Trustee.

## **CONCLUSION**

Based on the foregoing, this court hereby upholds the settlement agreement in accordance with its terms. Since Holloway has been, and remains, ready and willing to pay $750,000.00 to fulfill his promised assurance, this court directs defendant J.L. Holloway, within twenty (20) days of the date of this order, to pay that sum of $750,000.00 dollars to Liberty Mutual Insurance Company and Employers Insurance of Wausau. In exchange for said payment, Liberty Mutual Insurance Company and Employers Insurance of Wausau shall provide mutual release(s) provided for in the

settlement agreement for Ham Marine, Inc., Friede Goldman International, Inc., Petra Contractors, Inc., J. L. Holloway, KT Contractors, Inc., Ron W. Schnoor, Robert C. Andrews, Jr., Kim Adkins, W. Edward Trehern, and BancorpSouth Bank . The motion for summary judgment submitted by the defendant J.L. Holloway [**Docket No. 26-1**] therefore is hereby granted.

Inasmuch as this court conducted a hearing on this matter on an earlier day, this court determines as moot the motion of the plaintiffs Liberty Mutual Insurance Company and Employers Insurance of Wausau to reset their motion for summary judgment on the personal guaranty of J.L. Holloway [**Docket No. 25-1**]. The court also finds as moot the motion of Liberty Mutual to alter the judgment or amend the judgment entered in this court's minute entry of November 5, 2007 [**Docket No. 39-1**]. Finally, this court denies plaintiffs' motion for partial summary judgment [originally found in **Docket No. 16-1**]. When this court earlier denied the motion in favor of bankruptcy proceedings, this court allowed plaintiffs an opportunity to re-urge that motion once the bankruptcy proceedings were terminated. Plaintiffs informed the court that they were re-urging the motion after the bankruptcy proceedings had terminated. The docket sheet in the instant case does not show this however, but the court considered the motion nevertheless.

**SO ORDERED AND ADJUDGED, this the 20th day of September, 2010.**

        **s/ HENRY T. WINGATE**
        **CHIEF JUDGE**
        **UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:01-CV-935WS
Memorandum Opinion and Order